Howard W. Brill, Chief Justice, concurring. |9I agree with the majority that this case should be reversed and dismissed. I write separately to set forth my rationale. Arkansas Code Annotated section 5-13-210(b) (Repl. 2013) states that [i]t is unlawful for any person to administer or cause to be ingested, inhaled, or otherwise introduced into the human body of another person a controlled substance as defined by the Uniform Controlled Substances Act, § 5-64-10Í et seq., unless the controlled substance has been ordered for the person receiving the controlled substance by a licensed practitioner, licensed by the state to prescribe controlled substances in the schedule involved and this being for. a legitimate medical purpose. The scope of this statute presents the issue for this court. No one would dispute, for example, that the statute prohibits a parent from feeding a child marijuana-laced brownies. Likewise, no one would reasonably contend that a nursing mother suffering from nasal congestion who ingests a controlled substance such as Schedule V pseudoephedrine should be prosecuted if the substance is transferred into her milk and absorbed by her infant. In this case, Arms admitted that she had injected methamphetamine three times while pregnant. - She -admitted that she had smoked methamphetamine the. day before she was admitted to the hospital in labor. Both Arms and her newborn son tested positive for methamphetamine, arid the baby exhibited symptoms of withdrawal. The issue' is whether Arms’s conduct falls[1] within those actions proscribed by section 5-13-210(b). The'State contends that the circuit court did not err in concluding that the statute applied in this case because Arms’s unborn child was considered a “person” under section 5-13-2ÍO(b). Further, the State contends that, although Arms may be" correct in' stating that section 5-13-210 does not expressly include the term “unborn child,” Arkansas law | ^nonetheless clearly establishes that fetuses are entitled to protections that - the law otherwise accords to persons. FinaEy, it argues that the “otherwise introduced” language encompasses the transmission of a.controlled substance through the umbilical cord in the immediate minutes after the birth of the baby. In -its' definitions in the criminal code, the legislature in 1999 adopted- Act 1273, amending Arkansas Code Annotated section 5-1-102 to include “unborn child” within the definition of “person” for homicide offenses.. See Michael S. Robbins, Comment, The Fetal Protection Act: Redefining “Person” for the Purposes of Arkansas’ Criminal Homicide Statutes,' 54 Ark. L.Rev. 75 (2001) (discussing the historical treatment of unborn children in the law). The protection of unborn children is likewise found.in Arkansas Code Annotated section 5 — 13—201(a)(5), which states that a person commits first-degree battery if with the purpose of causing serious physical injury to an unborn child or to a woman who is “pregnant with an unborn child,” the person causes serious physical injury to the unborn child. Moreover, in certain circumstances, a pregnant woman is justified in using physical force or deadly physical force-against another person to protect ■ her unborn child. See Ark. Code Ann. § 5-2-615 (Repl. 2013). What is clear from these enactments is that when the legislature, intends to include “unborn child” within the definition of “person,” or it intends to afford protection to unborn children, it expressly does so in the statute. The criminal code defines “person” as “[a]ny natural person,” and “[w]hen appropriate, an organization as defined in § 5-2-501.” Ark. Code Ann. § 5-l-102(13)(A) (Repl. 2013). However, the criminal-code definition of |, /‘person” is expressly expanded to include “unborn child” only in cases of homicide. See id. § 5-l-102(13)(B). The legislature has chosen not to include “unborn child” within the definition of “person” for the purposes of section 5-13-210(b).[1] And it is the legislature, not the court, that determines the kind of conduct that constitutes a crime. See Sparrow v. State, 284 Ark. 396, 683 S.W.2d 218 (1985); see also Meadows v. State, 291 Ark. 105, 722 S.W.2d 584 (1987) (declining to create a common-law crime for the reckless killing of an unborn fetus when the legislative intent shown, if any, is that the killing of a viable fetus is not manslaughter). It is reasonable to infer that Arms’s use of methamphetamine during her pregnancy offends the public policy of this state. As determined by the people, Arkansas public policy “is to protect the life of every unborn child from conception until birth, to the extent permitted by the Federal Constitution.” Ark. Const, amend. LXVIII, § 2.[2] But the amendment is not a self-executing provision that criminalizes all conduct that might affect the health of an unborn child. “[F]or a constitutional provision to be self-executing, there must be language-in the provision indicating that it ‘is intended as a present enactment, complete in itself as definitive legislation, or contemplates subsequent legislation to carry it 11s>into effect.’ ” Knowlton v. Ward, 318 Ark. 867, 875, 889 S.W.2d 721, 726 (1994) (quoting Myhand v. Erwin, 231 Ark. 444, 452, 330 S.W.2d 68, 72-73 (1959) citing 16 C.J.S. Constitutional Law § 48, at 146 (1956)). It is self-executing if it supplies a sufficient rule by means of which the right given may be enjoyed and protected, or the duty imposed may be enforced; and it is not self-executing when it merely indicates principles, without laying down rules by means of which those principles may be given the force of law. Knowlton, 318 Ark. at 875, 889 S.W.2d at 726 (quoting Thomas M. Cooley, Constitutional Limitations 121 (7th ed. 1903)). Although amendment 68 reflects the public policy of this state, it does not provide any means to effectuate the policy. See id., 889 S.W.2d at 726. Rather, the policy expressed in the amendment has been given the force of law through legislative enactments, and this court has recognized that legislative action is necessary to clarify whether a statute applies to an unborn child or a viable fetus.[3] No one wishes to discourage pregnant women who are fighting an addiction from |13seeking treatment and rehabilitation for substance abuse. The argument has been made that criminal prosecutions will have that effect. However, that balancing of legitimate policies is to be made by the legislature, and not by this court.[4] Just as criminal convictions cannot be based on general statements of policy or legislative intent alone, they cannot be set aside because of perceived public-health issues. Because the conduct at issue in this case was not expressly included by the legislature when it enacted section 5-13-210, I am compelled to reverse and dismiss. Rhonda K. Wood, Justice, concurring. I concur with the majority opinion that this case should be reversed and dismissed. However, I depart from the opinion’s concluding remarks, which suggest that section 5-13-210 could never include the transfer of a controlled substance through a passive bodily function. We can decide this appeal without addressing this issue, so the majority’s final comments are purely advisory. The briefs in this case focused on two questions: whether the definition of “person” from section § 5-13-210 includes an [14unborn person and whether sufficient evidence supports the verdict. At no point did appellant, the State, or amici analyze whether “otherwise introduced” excludes a passive bodily function.[1] Nor did appellant raise at trial the argument that “otherwise introduced” could not include a passive transfer through the umbilical cord post-delivery. Instead, she limited her argument concerning post-delivery transfer to the insufficiency of the evidence.[2] We have re.peatedly held that we will not address an issue not raised and ruled on by the trial court and to otherwise would be to issue an advisory opinion, which we will-not do! See, e.g., Johnson v. State, 314 Ark. 471, 863 S.W.2d 305 (1993) (holding the constitutional issue was not preserved and thus declining to issue an advisory opinion). Rather than ruling on an undeveloped issue, I would reverse simply because the evidence was insufficient. On this point I agree with the majority that there was no evidence presented at trial that methamphetamine transferred from appellant to her child via the umbilical cord in the short moments post-delivery. I also agree with the majority that, under our rules of statutory construction, section 6-13-210 cannot be read to include an unborn child. The General Assembly specifically amended the homicide offenses to include an unborn [1Bchild, but failed to likewise amend section 5-13-210.[3] . Should it intend otherwise, the General Assembly can amend the relevant statutes to criminalize the introduction of drugs by a mother to her unborn child., . In the 2015 legislative session, HB 1376, which would have amended section 5-1-102(13)(B)(i)(a) to add section 5-13-210 to the enumerated statutes in which “unborn child” is included within the definition of "person,” died in the House at sine die adjournment. . The state has a compelling interest in protecting potential human life at the point of viability. Planned Parenthood of Se. Pa. v. Casey, 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992); Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); see also Edwards v. Beck, 786 F.3d 1113, 1119 (8th Cir. 2015) (recognizing that “viability steadily moves back towards conception”). . For example, in Arkansas Department of Human Services v. Collier, 351 Ark. 506, 95 S.W.3d 772 (2003), we held that the statutory definition of a child (“birth to age 18”) in the juvenile code did not authorize a court to take an unborn child into custody. In Chatelain v. Kelley, 322 Ark. 517, 910 S.W.2d 215 (1995), we held that the wrongful-death statute did not cover the death of an unborn child. See Brenda Daugherty Snow, Note, A Viable Fetus is Not a "Person" Under the Arkansas Wrongful Death Statute. Chatelain v. Kelley, 322 Ark. 517, 910 S.W.2d 215 (1995), 19 U. Ark. Little Rock L.J. 307 (1997). The legislature responded to that decision by amending the wrongful-death statute to expressly include "viable fetus.” See Act of Apr. 12, 2001, No. 1516, 2001 Ark. Acts 6068, codified at Ark. Code Ann. § 16 — 62—101(a)(1). In partial reliance on "the current expression of legislative intent,” we overruled Chatelain, just one month after the statute was enacted. See Aka v. Jefferson Hosp. Ass’n, Inc., 344 Ark. 627, 641, 42 S.W.3d 508, 519 (2001); see also Raina Weaver, Note, The Birth of Fetal Rights Under Arkansas's Wrongful Death Statute: The Arkansas Supreme Court Recognizes a Fetus as a "Person." Aka v. Jefferson Hospital Ass’n, Inc., 344 Ark. 627, 42 S.W.3d 508 (2001), 24 U. Ark. Little Rock L.Rev. 359 (2002). . HB 1376 of 2015 included this statement of legislative intent: The General Assembly encourages circuit judges and prosecuting attorneys to permit a woman charged under § 5-13-210 when the woman was carrying an unborn child in útero and. the commission of the offense resulted in the death of or other injury to that unborn child to enter into substance abuse treatment and rehabilitation as opposed to being convicted and sentenced under § 5-13-210. . Appellant did argue that she could not be convicted of the crime because she failed to commit a voluntary act. Ark. Code Ann. § 5-2-204(a) (Repl. 2013) ("A person does not commit an offense unless his or her liability is based on conduct that includes a voluntary act”). Appellant even cited two cases from other jurisdictions to support this proposition. See State v. Armstard, 991 So.2d 116 (La. Ct. App. 2008); Johnson v. State, 602 So.2d 1288 (Fla. 1992). However, whether appellant committed a voluntary act per Ark. Code Ann. § 5-2-204 is a different question from whether "otherwise introduced” from section 5 — 13— 210 has a definition that excludes passive bodily functions. . As discussed infra, appellant’s only statutory-construction argument related to whether an unborn child was a person under section 5-13-210. ' . In addition, we cannot ignore that the General Assembly specifically excluded a mother from prosecution for the homicide of her unborn child. Ark. Code Ann. § 5-1-102(13)(B)(iii).